**Salvatore SCLAFANI, Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant.**

**No. 88–0401–Civ.**

United States District Court, S.D. Florida.

May 7, 1992.

Joel V. Lumer, Miami, Fla., for plaintiff.

Andrew V. Tramont, Miami, Fla., for defendant.

**ORDER ENTERING FINAL SUMMARY JUDGMENT ON BEHALF OF DEFENDANT CENTRAL STATES**

ARONOVITZ, District Judge.

This is an action brought by Plaintiff Salvatore Sclafani ("Sclafani") against the Central States, Southeast and Southwest Areas Pension Fund ("Central States"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover pension benefits denied to him by the Board of Trustees of Central States. The matter is now before the Court upon Defendant Central States' Motion for Summary Judgment, file dated June 6, 1990.

Having considered the Motion, response, reply, supplemental written filings, argument of counsel, applicable law, and the pertinent portions of the record, and being otherwise fully advised in the premises, the

Court herein files the following Memorandum Opinion.

## I. BACKGROUND

The Central States Pension Fund, a qualified trust pursuant to the Internal Revenue Code, provides pension benefits to union employees whose employers have agreed through a collective bargaining agreement to contribute monies to the fund. Plaintiff Salvatore Sclafani ("Sclafani") was employed by an employer company who participated in and contributed to the Central States Pension Fund.

On September 20, 1984, Sclafani applied for pension benefits effective on his chosen date of retirement, June 10, 1985. Thereafter, Sclafani ceased working for his employer who contributed to the Central States' Pension Fund, thus becoming eligible to receive pension benefits.

While Sclafani's application for benefits was being processed, he notified Central States by letter dated October 13, 1985 that he had accepted employment with the United States Postal Service as a "mail handler." In light of this information, the Reemployment Committee of the Pension Fund concluded on March 21, 1986, that Sclafani was engaged in "prohibited reemployment" under section 4.09(a)(2)[1] of the Plan, and therefore, was not entitled to benefits under the plan so long as this reemployment continued.

Sclafani appealed this determination to the Benefits Claims Appeals Committee, in accordance with the Central States' internal appellate procedures. The decision denying benefits, however, was affirmed. On September 16, 1986, Sclafani's claim was considered by the Board of Trustees, who also denied the claim. This denial was based on the Board's finding that Sclafani's employment by the U.S. Postal Service was work "of the type" covered by a Teamster collective bargaining agreement—namely, that of *United Parcel Service* ("UPS"), a contributing employer to Central States.

Stated another way, Central States found that the types of work performed by the U.S. Postal Service and UPS were similar, and therefore, Sclafani was not entitled to benefits so long as he was employed by the U.S. Postal Service. This finding was not disturbed by the revision of section 4.09 in 1987; Sclafani's claim was again denied by the Reemployment Committee on March 3, 1987, even in light of the changes adopted by the Board to clarify the reemployment provisions.

On March 7, 1988, Sclafani filed this action, pursuant to ERISA, 29 U.S.C. § 1001 *et seq.*, to recover pension benefits denied to him by Central States. Sclafani alleges that the denial of benefits to him under the Central States Pension Plan was an arbitrary and capricious decision by the trustees of Central States. In particular, Sclafani alleges that the trustees of the Pension Fund abused their discretion in interpreting section 4.09 of the plan to include employment as a U.S. Postal Worker in the definition of "prohibited reemployment."

Thereafter, Central States filed its First Motion for Summary Judgment. On September 19, 1989, this Court denied said motion without prejudice in light of the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This Court held that, in accordance with *Firestone*, a review of the Trustees' interpretation of the plan should be based on the reasonableness standard, not on the arbitrary and capricious standard. The Court ordered that Central States may renew the motion if and when a Second Amended Complaint, incorporating the "reasonableness standard," was filed. On June 6,

---

**1.** Section 4.09 was re-designated section 4.12 in February 1987, and revised to redefine the terms of prohibited employment. Old section 409(a)(2) provided that "retirement pension payments shall be suspended for all periods of reemployment in the Teamster Industry." "Teamster Industry" was defined in the Plan as "all public and private work covered, or of the type covered, by an Collective Bargaining Agreement."

Revised Section 4.12 defined prohibited reemployment to include work "in any capacity ... for an employer which was, at any time ... an employer engaged in the types of business activities in which a Contributing Employer is engaged."

1990, Central States renewed its Motion for Summary Judgment.

## II. LEGAL STANDARD

Subsequent to this Court's earlier Order denying the motion for summary judgment, the 11th Circuit held that where a benefit plan gives discretion to an administrator or fiduciary to construe the terms of the plan, any decision to deny pension benefits, under *Firestone*, must be reviewed under the "arbitrary and capricious" standard. *See Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137 (11th Cir.1989). The *Jett* court used the "arbitrary and capricious" standard interchangeably with the "reasonableness" standard, suggesting that an interpretation that is not "reasonable" must necessarily be "arbitrary and capricious." *Jett*, 890 F.2d at 1139; *Brown v. Blue Cross and Blue Shield of Alabama*, 898 F.2d 1556, 1558 (11th Cir.1990).

■ The question of reasonableness is a legal question to be determined by the court. *See Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137 (11th Cir.1989). A fiduciary's decision to deny benefits deserves the greatest degree of deference where the fiduciary is a disinterested, impartial decisionmaker. *Brown*, 898 F.2d at 1564. Where the claimant does not argue or cannot show that the trustees had a significant conflict of interest, the denial of benefits may be reversed only if the denial is "completely unreasonable." *Brown*, 898 F.2d at 1564 (citing *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1053 (7th Cir.1987)).

## III. ANALYSIS

Sclafani does not contend, nor can he show, that the Board of Trustees had a significant conflict of interest, or ulterior self-interested motive, in denying his claim. In that respect, this case is not one in which the Trustees have a personal financial stake in their decision. *See e.g. Brown*, 898 F.2d 1556, 1562 (strong conflict of interest exists when a fiduciary making

a discretionary decision is also the insurance company responsible for paying the claims). Therefore, the Trustees decision in denying Sclafani's claim must be viewed with great deference.

In a motion for summary judgment, the party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, admissions, and affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is satisfied, however, the non-moving party, if it bears the burden of proof at trial on a dispositive issue, *must* go beyond the pleadings and must demonstrate by affidavit or otherwise that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Even if there is no genuine issue as to any material fact, the moving party must also persuade the Court that it is entitled to judgment as a matter of law.

Importantly, Sclafani has not come forward with evidence which demonstrates the existence a genuine issue of material fact for trial. In fact, the parties are essentially in agreement as to the relevant facts of this case. While Sclafani has submitted affidavits and depositions which suggest that the Board of Trustees and Reemployment Committee did not fully consider and compare the activities of the U.S. Postal Service and UPS, this evidence goes to the reasonableness of the decision. The evidence does not demonstrate material facts which are in dispute.[2] Thus, the sole issue facing this Court is purely a question of law: whether the decision of the trustees in denying Sclafani's claim for pension benefits was "arbitrary and capricious" or unreasonable.

*Reasonableness*

■ Central States urges a broad reading of sections 409(a)(1) and (2) to include employment for the U.S. Postal Service in

---

**2.** The William Oliver affidavit which Sclafani cites as creating an issue of fact is inapposite. Oliver *opined* that the denial of benefits to Scla-

fani was arbitrary and capricious—this is an opinion of law, not a statement which creates an issue of fact.

its category of work "of the type covered" by a collective bargaining agreement. Based on this broad reading, Central States urges that its interpretation of the Plan to preclude benefits for someone accepting a position as a mail handler with the U.S. Postal Service was certainly reasonable. Further, Central States argues that even under revised section 4.12, Sclafani's position with the U.S. Postal Service is a "type of business activity" in which a contributing employer to Central States (UPS) is engaged.

Sclafani responds that Central States violated several procedural requirements under the Plan's Benefits Claim Appeal Procedure, thus constituting arbitrary and capricious behavior. Alleged violations include failing to properly produce documentary evidence justifying the Reemployment Committee's decision and failing to investigate the various activities of the U.S. Postal Service before arriving at the conclusion that it engages in work similar to UPS. Sclafani also argues that the decision of the Trustees was unreasonable because the business activities of the U.S. Postal Service have little in common with those of UPS. Sclafani contends that the overlap in their business activities is minimal at best.[3]

While this Court makes no finding as to the degree of overlap between the U.S. Postal Office and UPS, we do not believe that Central States acted arbitrarily and capriciously in denying Sclafani's claim for benefits. Central States relied upon its familiarity with the business activities of UPS, its largest contributing employer, and of the U.S. Postal Service in determining that the two businesses were similar for purposes of the "prohibited reemployment" provision of the plan. Sclafani takes issue with the fact that Central States did not conduct a formal, detailed investigation of the two businesses to determine their similarity. However, he cites no caselaw which would require Central States to have done so. In fact, ERISA does not specifically require that Central States conduct a

detailed fact-finding investigation—the failure to do so only weighs on the question of reasonableness.

This Court believes that the Trustees possessed sufficient information with which to assess the similarity between the two businesses. UPS is Central States' largest contributing employer, and the activities of the U.S. Postal Service are self-evident. Both entities are involved in overnight delivery of letters and packages. Sclafani was a "mail handler;" UPS has employees who engage in the sorting and loading of packages.[4]

Moreover, this Court believes that the various hearings and appeals granted to Sclafani were procedurally sufficient and fundamentally fair. A review of the record illustrates that Sclafani was given numerous opportunities to present and support his claim for benefits. Sclafani simply failed to present sufficient evidence to the Trustees to persuade them that UPS and the U.S. Postal Service were sufficiently different so as to fall outside the "prohibited reemployment" provision. The Trustees of Central States, therefore, were not unreasonable or "arbitrary and capricious" in concluding that Sclafani had engaged in prohibited reemployment by accepting a position with the U.S. Postal Service.

*Conclusion*

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the said Motion be, and the same is hereby GRANTED. It appears from a careful review of the motions, filings and attachments that there are no genuine issues of material fact still in dispute. Defendant Central States is entitled to summary judgment as a matter of law. Based thereon, Final Summary Judgment is hereby entered on behalf of Central States.

DONE AND ORDERED.

---

3. Sclafani further maintains that the new Reemployment Rules adopted by Central States on March 1, 1990, excluding government employment from the category of "prohibited reemployment," lends further support to its position

that the Plan never intended to prohibit reemployment with the U.S. Postal Service.

4. *See* Deposition of Patrick Edmonds, pp. 43–44.